UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD ALDAZ, | ) Case No. CV 04-8505-RC |
| Plaintiff, | ) |
| vs. | ) OPINION AND ORDER |
| JO ANNE B. BARNHART, Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

    Plaintiff Edward Aldaz filed a complaint on October 14, 2004, seeking review of the Commissioner's decision denying his application for disability benefits. The Commissioner answered the complaint on March 11, 2005, and the parties filed a joint stipulation on June 3, 2005.

**BACKGROUND**

**I**

    On September 11, 2002 (protective filing date), plaintiff applied for disability benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 423, claiming an inability to work since

1  June 30, 2000, due to reflex sympathetic dystrophy, acute and chronic
2  swelling of both knees, and sporadic lower back pain.  Certified
3  Administrative Record ("A.R.") 59-62, 72.  The plaintiff's application
4  was denied on December 17, 2002.  A.R. 28-32.  The plaintiff then
5  requested an administrative hearing, which was held before
6  Administrative Law Judge Robert Ryan ("the ALJ") on July 17, 2003.
7  A.R. 33-34, 546-73.  On September 11, 2003, the ALJ issued a decision
8  finding plaintiff is not disabled.  A.R. 15-26.  The plaintiff then
9  sought review by the Appeals Council; however, review was denied on
10 September 23, 2004.  A.R. 5-14.

**II**

The plaintiff, who was born on October 28, 1967, is currently 38 years old.  A.R. 60.  He attended two years of college, and has previously worked as a delivery person, sales and stock clerk, gardener, security guard, and an importer.  A.R. 73, 78, 91-99, 552-55.

Since March 24, 1998, Joshua P. Prager, M.D., has treated plaintiff for neuropathic pain and failed back syndrome, among other conditions, by the use of lumbar sympathetic blocks, epidural injections, physical therapy, and numerous pain medications in an effort to alleviate plaintiff's symptoms.[1]  A.R. 123-47, 255-450, 493-508, 516-22, 524-25.  On November 9, 1999, in an effort to treat plaintiff's chronic pain, plaintiff had a permanent spinal cord

---

[1] Although plaintiff has both mental and physical complaints, this opinion addresses only his physical impairments.

2

stimulator implanted,[2] which initially improved his condition but was ultimately unsuccessful.  A.R. 435, 437, 440-42, 507.  A lumbar spine MRI taken January 31, 2001, revealed:  a circumferential disc bulge at L3-4, likely without clinical consequence; a posterior disc bulge at L4-5, narrowing the lateral recesses, left more than right, and possibly impinging on the traversing left S1 nerve roots; and a posterior disc bulge at L5-S1, which extends into the intervertebral foramina bilaterally and may compress the exiting right L5 nerve root.  A.R. 136-37, 400.  On August 7, 2001, following two earlier trials, A.R. 130-33, 141-45, Dr. Prager implanted in plaintiff an intrathecal morphine pump because plaintiff "had failed conservative treatment and continues to have intractable pain."  A.R. 125-29.  The plaintiff initially experienced improvement, but continues to have pain despite using the pump, especially when standing still, sitting or walking slowly, or with increased activities.  A.R. 255-57, 261-63, 294-96, 322-24, 334-36, 348-49, 355, 369, 373, 384, 387, 389-90.

On July 23, 2002, Dr. Prager performed another surgery on plaintiff to remove the previously implanted spinal cord stimulator, which was no longer needed following placement of the intrathecal morphine pump.  A.R. 123-24.  A lumbar spine MRI performed on or about December 16, 2002, revealed:  increased spasms during the study; the L4-L5 intervertebral disc is markedly desiccated with a broad central

---

[2] A spinal cord stimulator is "[a] small pulse generator, implanted in the back, [that] transmits electrical pulses to the spinal cord.  These pulses interfere with the nerve impulses responsible for chronic low back pain or leg pain and numbness."  Shannon Erstad, *Spinal Cord Stimulation for Low Back Pain*, WebMD, April 13, 2004, http://www.webmd.com/hw/back_pain/tn9286.asp.

disc protrusion measuring 4-5 mm. effacing the subarachnoid space interiorly and encroachment on the lateral recess and proximal intervertebral foramina bilaterally; and the L5-S1 intervertebral disc is markedly desiccated with a broad-based diffuse disc bulge of 3-4 mm. extending into the lateral recess and intervertebral foramen on the left and encroachment on the lateral recess and intervertebral foramina on the left. A.R. 497.

On May 19, 2003, Dr. Prager noted plaintiff's intrathecal morphine pump had proven "very effective"; however, Dr. Prager opined he "would not expect that the [plaintiff] would be able to progress to a possible employable status until he has completed a behavioral program and also has had his back rehabilitated and treated if necessary." A.R. 507, 524. On July 11, 2003, Dr. Prager noted plaintiff had depression, anxiety and severe neuropathic pain on both sides of his lower back, which is precipitated by cold, stress, movement and a static position, and which is shown by decreased flexion, muscle spasm, an abnormal gait, and tenderness. A.R. 516-22. Dr. Prager found plaintiff's condition is frequently severe enough to interfere with his attention and concentration and causes him a slight limitation in his ability to deal with work-related stress. A.R. 518. Dr. Prager opined plaintiff: can occasionally lift and carry less than 10 pounds; can walk for less than a block without rest; can continuously sit for 60 minutes and stand for 30 minutes; can stand and/or walk for 2 hours in an 8-hour day; can sit for at least 6 hours in an 8-hour day; plaintiff needs to walk for 5 minutes every 60 minutes, and he will need a job where he can alternate positions at will and take unscheduled breaks and rest for 5 minutes before

returning to work; plaintiff cannot bend or twist at the waist; plaintiff should avoid even moderate exposure to extreme cold; and he should avoid concentrated exposure to extreme heat, chemicals, solvents/cleaners, soldering, cigarette smoke, fumes, odors, dust and gases. A.R. 519-21. Dr. Prager also opined plaintiff's medication should not interfere with his ability to work, A.R. 518; however, his condition would cause him to miss more than 3 days of work each month. A.R. 521.

On September 4, 1997, Dennis Ainbinder, M.D., an orthopedic surgeon, performed an agreed medical examination of plaintiff and diagnosed him with a right knee sprain, status post-arthroscopic surgery of both knees and status post-left knee lateral release and patellofemoral realignment with quadriceps repair. A.R. 189-201. Dr. Ainbinder concluded plaintiff is permanent and stationary and a qualified injured worker and he should be precluded from prolonged walking, repetitive ascending/descending stairs, repetitive squatting, repetitive kneeling and prolonged walking on uneven terrain. A.R. 199-200. On May 13, 1999, Dr. Ainbinder reexamined plaintiff and again diagnosed him as having the previous conditions, and found plaintiff remained permanent and stationary and a qualified injured worker; however, with regard to plaintiff's left knee, Dr. Ainbinder found plaintiff had lost approximately 75% of his ability for squatting, kneeling, ascending and descending stairs and walking, and he also has a work restriction precluding heavy lifting.[3] A.R. 184-

---

[3] Under the version of California's workers' compensation guidelines then in effect, a disability precluding heavy lifting "contemplates the individual has lost approximately 50% of pre-

85. On May 30, 2002, Dr. Ainbinder again evaluated plaintiff, diagnosed him as having the previous conditions and a spinal cord stimulator and pain pump for reflex sympathetic dystrophy,[4] a fractured right wrist (resolved), and a lumbar myofascial strain, and opined plaintiff is permanent and stationary and "100% totally disabled." A.R. 154-76. Finally, on January 15, 2004, Dr. Ainbinder again evaluated plaintiff, diagnosed him as having the same conditions, and again opined plaintiff should be considered "100 percent totally disabled." A.R. 526-37.

On January 13, 2001, plaintiff was taken to an emergency room with complaints of lower back pain. A.R. 213-15. Lumbar spine x-rays were normal and showed a lumbar epidural catheter in place for pain management. A.R. 216. Plaintiff was prescribed medication and discharged from the hospital. A.R. 213-15. The plaintiff returned to the hospital emergency room on March 26, 2002, with more complaints of severe lower back pain. A.R. 210-11. Lumbosacral spine x-rays showed placement of an intrathecal pump/catheter. A.R. 210-12.

//
//

---

injury capacity for lifting." Schedule for Rating Permanent Disabilities, Spine and Torso Guidelines, 2-14 (Labor Code of California, April 1997). The Schedule for Rating Permanent Disabilities has been revised, effective January 2005.

[4] Reflex sympathetic dystrophy consists of "a series of changes caused by the sympathetic nervous system, marked by pallor or rubor [redness], pain, sweating, edema, or osteoporosis, following muscle sprain, bone fracture, or injury to nerves or blood vessels." Dorland's Illustrated Medical Dictionary, 560, 1588 (29th ed. 2000).

On November 27, 2002, a nontreating, nonexamining physician opined plaintiff can occasionally lift and/or carry up to 20 pounds, climb, balance, stoop, kneel, crouch, and crawl, and frequently lift and/or carry up to 10 pounds. A.R. 451-58.

**DISCUSSION**

**III**

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff's application for disability benefits to determine if her findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching her decision. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).

The claimant is "disabled" for the purpose of receiving benefits under the Act if he is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). "The claimant bears the burden of establishing a prima facie case of disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

The Commissioner promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case. 20 C.F.R. § 404.1520. In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial

gainful activity. 20 C.F.R. § 404.1520(b). If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting him from performing basic work activities. 20 C.F.R. § 404.1520(c). If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. § 404.1520(d). If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite his limitations to perform his past work. 20 C.F.R. § 404.1520(f). If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(g).

Applying the five-step sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since the alleged onset of disability. (Step One). The ALJ then found plaintiff's reflex sympathetic dystrophy is a severe impairment (Step Two); however, plaintiff does not have an impairment or combination of impairments that meet or equal a Listing. (Step Three). The ALJ next determined plaintiff is able to perform his past relevant work as a security guard; therefore, he is not disabled. (Step Four). Alternately, the ALJ determined plaintiff is not disabled because he can perform a substantial number of jobs in the national economy. (Step Five).
//
//

**IV**

A claimant's residual functional capacity ("RFC") is what he can still do despite his physical, mental, nonexertional and other limitations. Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). Here, the ALJ found plaintiff has the RFC "to perform substantially all of the full range of light work."[5] A.R. 25. However, plaintiff contends the ALJ's finding is not supported by substantial evidence because the ALJ improperly rejected the opinions of his treating and examining physicians and erroneously determined he is not a credible witness. The Commissioner concedes "the ALJ's reasons for rejecting the opinions of treating physician Dr. Prager and examining physician Dr. Ainbinder were insufficient[,]" but argues the ALJ properly determined plaintiff is not credible and, in any event, the matter should be remanded to the Social Security Administration so the opinions of plaintiff's physicians can be reevaluated. Jt. Stip. at 7:18-21, 9:23-10:8, 18:22-20:15, 23:27-28.

Here, the Commissioner concedes the ALJ's reasons for rejecting the opinions of Drs. Prager and Ainbinder "were insufficient"; thus,

---

[5] Under Social Security regulations, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b). "[T]he full range of light work requires standing or walking for up to two-thirds of the workday." Gallant v. Heckler, 753 F.2d 1450, 1454 n.1 (9th Cir. 1984); SSR 83-10, 1983 WL 31251, *6.

9

the Court need not address this issue. Nevertheless, the Commissioner argues that the opinion of the nonexamining, nontreating physician constitutes substantial evidence to support the ALJ's finding that plaintiff can perform light work. Jt. Stip. at 15:23-25; see A.R. 451-74. The Court disagrees.

This Court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision[,]" Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003); see also Cequerra v. Sec'y of Health & Human Servs., 933 F.2d 735, 738 (9th Cir. 1991) ("A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency."), and, here, the ALJ did not cite the opinion of any nonexamining physician to support his finding that plaintiff can perform light work. Indeed, having rejected the opinions of the treating and examining physicians who addressed plaintiff's limitations -- all of whom determined plaintiff is essentially unemployable and disabled -- the ALJ failed to set forth any evidence supporting his RFC finding; rather, he "'substitut[ed] his own judgment for competent medical opinion[,]'" which is improper. Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975). Moreover, the opinion of a nonexamining physician, without more, would not provide substantial evidence to support the ALJ's decision. See, e.g., Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990)("The nonexamining physician's conclusion, with nothing more, does not constitute substantial evidence, particularly in view of the conflicting observations, opinions, and conclusions of an examining physician.");

10

cf. Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) ("Without a personal medical evaluation it is almost impossible to assess the residual functional capacity of any individual."); Nelson v. Heckler, 712 F.2d 346, 348 (8th Cir. 1983) (per curiam) ("'[T]o attempt to evaluate disability without personal examination of the individual and without evaluation of the disability as it relates to the particular person is medical sophistry at its best.'" (citation omitted)). Therefore, the ALJ's finding that plaintiff can perform light work is not supported by substantial evidence.

**V**

The plaintiff testified at the administrative hearing that his reflex sympathetic dystrophy causes "excruciating" lower back and knee pain, and that due to his pain, he can only lift 15 pounds, stand for approximately 5 minutes, walk for approximately 10 minutes and sit for approximately 5-10 minutes, and he cannot bend, stoop or squat at all. A.R. 555, 561-62. The plaintiff averred he has difficulty sleeping due to his pain and worry, and sleeps an average of 3 hours a night, A.R. 560; has problems with his memory; finds it difficult to work with or be around people; and approximately twice a week, he gets so depressed he will not eat. A.R. 555, 562, 566. Further, plaintiff noted he has had six surgeries (four knee surgeries and two surgeries to implant pain control devices in his lower back), another back surgery was scheduled in 2004, and he is also being treated with pain medication and physical therapy. A.R. 556-59.

Once a claimant has presented objective evidence he suffers from an impairment that could cause pain, the ALJ may not discredit the

claimant's testimony "solely because the degree of pain alleged by the claimant is not supported by [the] objective medical evidence." Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991) (en banc); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).  Rather, if the ALJ finds the claimant's subjective complaints are not credible, he must make specific findings to support that conclusion.  Moisa, 367 F.3d at 885; Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001). Furthermore, if there is medical evidence establishing an objective basis for some degree of pain and related symptoms, and no evidence affirmatively suggesting the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."  Morgan v. Commissioner of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

   The ALJ found plaintiff is "not totally credible" due to inconsistencies between plaintiff's testimony at the administrative hearing and the medical record, specifically noting that although plaintiff testified he could only stand for 5 minutes, walk for 10 minutes, and sit for 5-10 minutes before experiencing pain, "the medical records from October 2002 to December 2002 state that the [plaintiff] exercises on a stationary bicycle up to 30 minutes a day." A.R. 22; see also A.R. 493 (follow-up note of December 3, 2002, that plaintiff "continues to exercise fifteen to thirty minutes five days a week on a stationary bike. . . .").  However, an ability to ride an exercise bike for up to 30 minutes *a day* is not necessarily inconsistent with an inability to sit for longer than 10 minutes *at a*
*//*
*//*

12

***time*.**[6]  Moreover, the medical records show plaintiff experienced an exacerbation of his back and leg pain and stopped even this minimal exercise as of January 2003.  A.R. 499, 501.  Therefore, this is not a clear and convincing reason for rejecting plaintiff's testimony.  <u>Webb v. Barnhart</u>, 433 F.3d 683, 688 (9th Cir. 2005); <u>Regennitter v. Commissioner of the Soc. Sec. Admin.</u>, 166 F.3d 1294, 1296 (9th Cir. 1999).

Another reason give by the ALJ to support his adverse credibility finding is that plaintiff "testified at the hearing that he was completely unable to perform the activities of bending, stooping, or squatting but in November 2002 he stated that he did some cooking, some cleaning around the house, and 'most chores.'"  A.R. 22.  However, the ALJ did not identify any household chore plaintiff does that requires him to bend, stoop, or squat.  Moreover, and more importantly, the ALJ's characterization of plaintiff's testimony is misleading and incomplete.  Although plaintiff testified at the administrative hearing that he sometimes cooks and cleans the house, he has also reported in a "Daily Activities Questionnaire" that his ability to perform these chores and any activity "depends on [his] level of pain," and if his reflex sympathetic dystrophy inflames, then he is "unable to wear pants, shower or stand for 10 plus min[utes] [as

---

[6]  It is also worth noting that Dr. Prager instructed plaintiff "to incorporate bicycling into his regimen, at a minimum every other day, with long-term goal of bicycling 30 minutes five times per week."  A.R. 336; <u>see</u> <u>Carradine v. Barnhart</u>, 360 F.3d 751, 755 (7th Cir. 2004) ("Since exercise is one of the treatments that doctors have prescribed for [claimant's] pain, and she does not claim to be paralyzed, we cannot see how her being able to walk two miles is inconsistent with her suffering severe pain.").

1 well as] unable to kneel, squat, crawl, etc." A.R. 85. Similarly,
2 plaintiff has reported he "can do most chores, but if pain sets in
3 then I have to stop." A.R. 86. As such, the ALJ has not identified
4 any material inconsistency between plaintiff's testimony at the
5 administrative hearing and the medical record, and this reason also is
6 not a clear and convincing reason for rejecting plaintiff's testimony.
7 Webb, 433 F.3d at 688; Regennitter, 166 F.3d at 1296.

9     Finally, the last reason offered by the ALJ is that although
10 plaintiff testified that, "due to depression, he would go the whole
11 day without eating about two times per week[,] . . . [his] current
12 weight is inconsistent with a severely depressed appetite"; rather, on
13 May 21, 2002, plaintiff "stated that he had a 20 pound weight gain (to
14 230 pounds) over the last three months." A.R. 22. Yet, the ALJ
15 failed to consider that plaintiff has been taking numerous pain
16 medications and testosterone injections, which can be linked to his
17 weight gain. See A.R. 282, 303. Indeed, when plaintiff stopped the
18 testosterone injections, his weight dropped 15 pounds in one month
19 (between July 4 and August 6, 2002). See A.R. 282, 285. In short,
20 this, too, is not a clear and convincing reason for rejecting
21 plaintiff's testimony. Webb, 433 F.3d at 688; Regennitter, 166 F.3d
22 at 1296.

24     Since "the ALJ provided unsatisfactory reasons for discounting
25 [plaintiff's] credibility, . . . his findings [a]re unsupported by
26 substantial evidence based on the record as a whole." Reddick, 157
27 F.3d at 724. Indeed, plaintiff's "constant quest for medical
28 treatment and pain relief refutes" a finding that he is not credible.

14

Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001); see also Carradine, 360 F.3d at 755 ("What is significant is the improbability that [claimant] would have undergone the pain-treatment procedures that she did, which included not only heavy doses of strong drugs such as Vicodin, Toradol, Demerol, and even morphine, but also the surgical implantation in her spine of a catheter and a spinal-cord stimulator, merely in order to strengthen the credibility of her complaints of pain and so increase her chances of obtaining disability benefits[.]"); Cox v. Apfel, 160 F.3d 1203, 1207 (8th Cir. 1998) ("We question whether a claimant with seven years of medical records detailing repeated complaints of severe pain, who undergoes three back surgeries in the hopes of alleviating that pain, and who now lives with a morphine pump implanted in her body, can be found not credible regarding her complaints of pain.").

**VI**

The ALJ's Step Four determination that plaintiff can perform his past relevant work as a security guard is not supported by substantial evidence for the reasons discussed above in Parts IV and V. Similarly, the ALJ's Step Five determination that plaintiff can perform other work in the national economy is not supported by substantial evidence since plaintiff cannot perform sedentary work, as discussed in this Part.

Where the ALJ "fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, [the Court must] credit that opinion 'as a matter of law.'" Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995) (citations omitted); Edlund v. Massanari, 253

15

F.3d 1152, 1160 (9th Cir. 2001). Similarly, "where the ALJ improperly rejects the claimant's testimony regarding his limitations, and the claimant would be disabled if his testimony were credited, . . . that testimony is . . . credited as a matter of law." Lester, 81 F.3d at 834; Reddick, 157 F.3d at 729; see also Benton v. Barnhart, 331 F.3d 1030, 1041 (9th Cir. 2003) (ALJ did not set forth clear and convincing reasons for rejecting claimant's subjective complaints, and "given [claimant's] obvious serious physical impairments, [her] claim of pain and physical limitations should have been credited").

Here, properly crediting plaintiff's testimony that he is limited to standing for approximately 5 minutes, sitting for approximately 5-10 minutes, and walking for approximately 10 minutes, it is clear plaintiff is unable to perform sedentary work.[7] See Vertigan, 260 F.3d at 1052 ("[T]he record detracts from any finding that [claimant] could do . . . any type of sedentary work since she cannot tolerate prolonged sitting or standing."); Gallant, 753 F.2d at 1454 ("'A man who cannot walk, stand or sit for over one hour without pain does not have the capacity to do most jobs available in the national economy.'" (quoting Delgado v. Heckler, 722 F.2d 570, 574 (9th Cir. 1984))). An individual who cannot perform even sedentary work is unable to perform

---

[7] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). Sedentary work requires "the ability to [sit] for six to eight hours a day." Vertigan, 260 F.3d at 1052; Tackett v. Apfel, 180 F.3d 1094, 1103 (9th Cir. 1999).

16

any substantial gainful employment. Reddick, 157 F.3d at 729-30; see also Sisco v. United States Dep't of Health & Human Servs., 10 F.3d 739, 745-46 (10th Cir. 1993) ("Because sedentary work is the lowest classification under the statute, there is no need for further proceedings in this matter other than a remand for an award of benefits."). Thus, the ALJ's Step Five determination that plaintiff can perform other work is not supported by substantial evidence, as well.[8]

## VII

When the Commissioner's decision is not supported by substantial evidence, the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 531 U.S. 1038 (2000). "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Benecke, 379 F.3d at 593; McCartey, 298 F.3d at 1076-77.

Here, this Court finds that the record has been fully developed and "remand for further administrative proceedings [would] serve[] no useful purpose and is unwarranted." Benecke, 379 F.3d at 596; Moisa

---

[8] Having so concluded, this Court need not reach the other issues plaintiff raises.

17

v. Barnhart, 367 F.3d 882, 887 (9th Cir. 2004).  Furthermore, "[r]emanding a disability claim for further proceedings can delay much needed income for claimants who are unable to work and are entitled to benefits, often subjecting them to 'tremendous financial difficulties while awaiting the outcome of their appeals and proceedings on remand.'"  Benecke, 379 F.3d at 595 (quoting Varney v. Sec'y of Health & Human Servs.,859 F.2d 1396, 1398 (9th Cir. 1988)).  Thus, an award of benefits is appropriate, here.

**ORDER**

    IT IS ORDERED that: (1) plaintiff's request for relief is granted, and (2) the Commissioner shall award plaintiff benefits under Title II of the Social Security Act, 42 U.S.C. § 423, and Judgment shall be entered accordingly.

DATE:   July 5, 2006                     /s/ Rosalyn M. Chapman
                                       ROSALYN M. CHAPMAN
                                  UNITED STATES MAGISTRATE JUDGE

R&R-MDO\04-8505.R&R
7/5/06